**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRANZACT TECHNOLOGIES, INC., doing business as FREEDOM LOGISTICS®, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> FREEDOM LOGISTICS LLC, a Tennessee limited liability company, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No.: <br> ) <br> ) Judge: <br> ) <br> ) Magistrate Judge: <br> ) <br> ) |

**COMPLAINT**

Now Comes the Plaintiff, Tranzact Technologies, Inc. doing business as "Freedom Logistics®", by and through its attorneys, Sullivan Hincks & Conway, and for its Complaint against Freedom Logistics LLC, states as follows:

**Jurisdiction and Parties**

1. This is an action for infringement of a federally registered service mark in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); for unfair and deceptive methods of competition in violation of Section 43 of the Lanham, (15 U.S.C. § 1125(a)); and for trademark dilution in violation of Section 43 of the Lanham Act, (15 U.S.C. § 1125(c)(1)).

2. This Court has jurisdiction over this dispute pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 as this action arises under the laws of the United States, specifically under an act of Congress relating to trademarks.

3. Venue is proper pursuant to 28 U.S.C. § 1391(c) as Defendant is a limited liability corporation holding itself out as doing business and, upon information and belief, doing business

1

as a motor carrier to, from, and through the geographic area encompassed by the District Court for the Northern District of Illinois.

4. The Plaintiff, Tranzact Technologies, Inc. doing business as "Freedom Logistics®" and providing a distinct and unique type of transportation service using the arbitrary description of "Freedom Logistics®" (hereinafter "Freedom"), is an Illinois corporation, headquartered at 360 West Butterfield Road, 4th Floor, Elmhurst, Illinois, lawfully authorized by the Federal Motor Carrier Safety Administration ("FMSCA") to conduct a transportation business and conducting a transportation business throughout the United States and, in this case, particularly transportation originating in, destined to and transiting the State of Tennessee. Freedom's authority to conduct its transportation business is primarily contained in Docket No. MC 303717 of the FMCSA.

5. Freedom's transportation service is premised upon the authority allowing the arrangement of intrastate and interstate brokering of motor carrier services and, within that context, securing the provision of transportation in an interstate transportation marketplace that includes a comprehensive suite of logistics solutions including freight bill payment services, freight bill auditing, transportation savings reports, carrier auction protocols responsive to specific shipper marketplace services, securing and providing freight rates to shippers, inbound route and rate management, loss and damage claim management and other unique logistics services securing the forwarding of shipments with trucks.

6. Freedom also develops and licenses software in conjunction with the aforementioned transportation and logistics services and, by doing so, otherwise holds itself out to the public and industry as a company providing a comprehensive set of transportation services for hire throughout the United States (hereinafter the "Logistics Services").

7. The Defendant, Freedom Logistics LLC ("Defendant") is a Tennessee limited liability company authorized by the FMCSA in Docket No. MC 916028 to conduct business as a for hire motor carrier throughout the United States, including transportation services that originate in, are destined to and transit the State of Illinois. Defendant maintains an agent in the State of Illinois for service of process as declared on a Form BOC-3 filed with the FMCSA, the capacity to be sued in the State of Illinois, is authorized to provide motor carrier transportation to, from and through Illinois, and, upon information and belief, Defendant provides motor carrier transportation that originates in, is destined to or transits the State of Illinois.

8. On information and belief, Defendant maintains a location of business in the State of Tennessee at 128 Holiday Court Suite 101, Franklin, Tennessee, 37067, and holds itself out as a motor carrier throughout the 48 contiguous continental United States, including motor carrier transportation services to, from and through the State of Illinois.

**Facts Common to All Counts**

9. Freedom is the owner of a service mark, "Freedom Logistics®", which was and is registered on the principal register in the United States Patent and Trademark Office since February 1, 2011, under registration number 3,913,567 (hereinafter the "Mark"). The registered service mark is solely owned by Freedom and is in full force and effect, unrevoked and un-cancelled. A copy of the certificate of registration for the Mark with proof of assignment is attached hereto and marked as Exhibit "1" and made a part hereof by this reference.

10. Freedom has continuously used Freedom Logistics® to identify its transportation and logistics business and has invested substantial monies (exceeding two million dollars) in developing unique transportation services provided nationwide in the United States, including,

3

most particularly in the States of Tennessee and Illinois, identified as "Freedom Logistics®" and has continued a pervasive use of this Mark since April 10, 1996.

11. Besides continuously exercising Freedom's ownership of the service mark, Freedom Logistics®, and the use of that ownership at common law, Freedom operated under the Mark pursuant to a prior registration on the principal register of the United States Patent and Trademark Office that was registered December 9, 1997 under Registration No. 2,020,561 and the Mark was claimed under Section 1 and Section 8 of the Lanham Act that was inadvertently let expire for a brief period of time although Freedom continued without interruption to use the Mark and to protect the Mark from April 10, 1996 to the present date.

12. Freedom has developed a unique system of providing the Logistics Services throughout the United States that has been continuously identified, advertised and specifically known by customers and generally known by the public as "Freedom Logistics®". Freedom has invested hundreds of thousands of dollars into securing and defending the Mark, besides developing the Logistics Services, continuously identified by the mark "Freedom Logistics®."

13. "Freedom Logistics®" is the service mark continuously used by Freedom in connection with its unique system of providing Logistics Services throughout the United States, and that use was undertaken and continued to distinguish Freedom's services from the services of all other transportation providers, including but not limited to for hire motor carriers (such as Defendant), logistics companies, freight brokers, third party logistics companies and other entities selling and providing transportation services.

14. Freedom, acting under the service mark "Freedom Logistics®" has a very good reputation throughout the United States in the transportation industry as a reliable provider of the Logistics Services, including, especially, the maintenance of a unique transportation marketplace,

and has developed a strong and loyal base of shipper-user-customers as well as carrier-vendor-customers throughout the United States.

15. On or about September 10, 2015, Freedom discovered for the first time, that Defendant was using the service mark "Freedom Logistics" in interstate commerce identifying itself as a motor carrier operating pursuant to Docket No. MC 916028 of the Federal Motor Carrier Safety Administration, mentioned on google.com, and carried on national load boards, as conducting for hire motor carrier service. Defendant incorporated in Tennessee but maintained a mailing address in California, which necessitated further investigation by Freedom.

16. After further investigation, on November 18, 2015, Freedom, through its attorneys, sent a letter to Defendant's registered agent demanding that Defendant cease and desist its continuing infringement of Freedom's registered service mark "Freedom Logistics®" and insisting Defendant affirmatively commit to cease using the service mark "Freedom Logistics®" in connection with its transportation and logistics services.

17. In response to the letter, Alberto Ruelas ("Ruelas") called Freedom's counsel on November 23, 2015. Ruelas is both Defendant's registered agent, and, on information and belief, the President and one of two members of Defendant. Ruelas was informed that his use of the name Freedom Logistics LLC in the motor carrier transportation industry constituted infringement of Freedom's Mark, and demand was made that Defendant immediately cease and desist its continuing infringement of Freedom's registered mark. A follow-up call was scheduled for two weeks later.

18. On December 7, 2015, Freedom's counsel called Defendant to ascertain what steps had been taken to cease the continuing infringement. Defendant did not answer, but the answering machine indicated a message could be left for "Freedom Logistics." Later that day, Freedom's

5

counsel again telephoned Defendant, and this time Ruelas answered. Ruelas indicated that he did not believe Freedom had any right to the Mark, and that he would not cease his continued infringement of the Mark.

19. The transportation services currently being offered and capable of being offered by Defendant to the general publics are substantially similar, and in many cases are identical, to the transportation services offered by Freedom under the "Freedom Logistics®" service mark including, but not limited to, nation-wide for hire motor carrier services, and Defendant's transportation operations and the offering of such services under the "Freedom Logistics®" service mark causes and is likely to continue to cause confusion among prospective shipper-customers and carrier-customers.

20. Since it commenced use of the "Freedom Logistics®" service mark in 1996, Freedom has actively and continuously advertised its services nationwide in national trade publications and via the Internet including at its website domain name [www.freedomlogistics.com](www.freedomlogistics.com). Freedom has also advertised regularly at tradeshows including the National Industrial Transportation League, one of the largest transportation trade associations in the United States.

21. Since it commenced using "Freedom Logistic®" service mark in 1996, including all periods during which it registered the "Freedom Logistics®" service mark on the principal register, Freedom has actively and continuously defended its service mark by monitoring trade publications and the Internet, among other methods, to guard against infringement and dilution, and has actively and continuously demanded that infringing third parties cease their infringement and dilution of the Mark including at least seventeen (17) companies headquartered throughout the Continental United States who have now recognized and acquiesced to Freedom's exclusive use of the Mark and Freedom's exclusive ownership of the Mark. These include a company

headquartered in Gordonsville, Tennessee who previously infringed the Mark, which necessitated suit being brought in this Honorable Court under Case No. 1:07-cv-06597, which case later was settled pursuant to an agreement to cease all infringement.

22. Defendant's use of the "Freedom Logistics®" mark is likely to cause actual confusion among Freedom's customers.

23. Defendant knew, or should have known and now knows that its actions in holding itself out under the service mark "Freedom Logistics®" would and will confuse customers of Freedom as well as the general shipping public and dilute the value of the Mark. Upon receipt of Freedom's demand letter Defendant had explicit notice that its actions, if continued, constituted a knowing and intentional infringement.

24. On information and belief, the services sold by, to be sold by and to be provided by Defendant are generally inferior to the broadly based and unique services provided by Freedom, acting under the "Freedom Logistics®" mark, as Freedom has many more years' experience in the transportation and logistics business, has developed a unique suite of software programs that support the transportation and logistics services developed in the transportation and logistics service marketplace, has a larger sales and support staff, and has the capacity to provide a variety of logistics management functions for its customers far more extensive and specialized than the services of Defendant.

25. Defendant's holding itself out as and under the service mark "Freedom Logistics" is likely to and will continue to injure the good reputation of Freedom developed over twenty years by virtue of the high level of high quality logistics services associated with Freedom operating under the service mark "Freedom Logistics®."

26. Defendants knew that Freedom was operating under the "Freedom Logistics®" service mark at least by November 23, 2015 and all infringing conduct thereafter was knowing and willful.

27. The continuing acts of Defendant in holding itself out and providing its services to the shipper and carrier public as Freedom Logistics directly infringes the service mark "Freedom Logistics®", and is likely to and will continue to cause confusion among the public involved with transportation and will also cause the entire motor carrier transportation sector to believe that such services are associated with the services Freedom provides and that such services are provided with the same high quality customer service at the same very low freight charges currently offered by Freedom despite the fact that such is not true.

28. The continued holding out of Defendant's services to the public under the service mark "Freedom Logistics®" constitutes a false designation of the source of origin of the services provided and represents an attempt by Defendant to palm off its services as those of Freedom.

29. Freedom has no adequate remedy at law and will suffer irreparable harm and damage as a result of Defendant's continuing infringement of Freedom's service mark in an amount that is presently incalculable.

## COUNT I – Violation of Lanham Act (15 U.S.C. § 1125(a))

30. Freedom hereby re-alleges and incorporates paragraphs 1 – 29 above as though fully set forth herein this Count I.

31. The Lanham Act, 15 U.S.C. § 1125(a)(1) states as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the

affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

32. Defendant's actions in holding itself out as "Freedom Logistics" in connection with any activities as a motor carrier involved with logistics services in interstate commerce, as represented to the Federal Motor Carriers Safety Administration and the shipping and motor carrier public, represents confusion and is likely to cause confusion among current and potential customers of Freedom.

33. Defendant's actions in holding itself out as a deceptively similar, in fact identical, service mark in connection with the activities of a motor carrier involved with logistics services in interstate commerce misrepresents the nature, characteristics and quality of the services provided such that Freedom has and is likely to continue to suffer loss to its goodwill if Defendant continues such actions.

WHEREFORE, Tranzact Technologies, Inc. d/b/a Freedom Logistics requests this Court to Enter an Order providing for the following:

1) Restraining and enjoining Freedom Logistics LLC, its officers, agents, employees, successors and attorneys, and all those in active concert or participation with it from continued use of the entity name or service mark "Freedom Logistics®";

2) Requiring Freedom Logistics LLC to amend its Articles of Organization and its name of record on file with the Tennessee Secretary of State, and all states in which it registers to do business;

3) That Freedom Logistics LLC be required to account for and pay Tranzact Technologies, Inc. d/b/a Freedom Logistics all profits to which it may be entitled and such other damages it suffered as a result of the wrongful acts of Freedom Logistics LLC;

4) Alternatively, that Freedom Logistics LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® statutory damages as provided in 15 U.S.C. § 1117;

5) That Freedom Logistics LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® treble damages and attorneys' fees as provided in 15 U.S.C. § 1117 on the ground that its acts as alleged herein have been willful and wanton;

6) That Tranzact Technologies, Inc. d/b/a Freedom Logistics® be granted its costs in this action, including an amount for reasonable attorney fees as provided for in 15 U.S.C. § 1117.

7) For such other relief that this Honorable Court shall deem just and proper.

**COUNT II – Infringement of Registered Service Mark (15 U.S.C. § 1114(b))**

34. Freedom hereby re-alleges and incorporates paragraphs 1 – 33 above as though fully set forth herein this Count II.

35. 15 U.S.C. § 1114(1) states, in part, as follows:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

36. Defendant's actions in using the "Freedom Logistics®" service mark as a for hire motor carrier in interstate commerce in connection with the sale, offering for sale and advertising of freight services, among logistics services, in a manner likely to cause confusion and deception, has harmed and is likely to harm Freedom by causing the loss of goodwill.

WHEREFORE, Tranzact Technologies, Inc. d/b/a Freedom Logistics® requests this Court to Enter an Order providing for the following:

1) Restraining and enjoining Freedom Logistics LLC, its officers, agents, employees, successors and attorneys, and all those in active concert or participation with it from continued use of the entity name or service mark "Freedom Logistics®";

2) Requiring Freedom Logistics LLC to amend its Articles of Organization and its name of record on file with the Tennessee Secretary of State, and all states in which it registers to do business;

3) That Freedom Logistics LLC be required to account for and pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® all profits to which it may be entitled and such other damages it suffered as a result of the wrongful acts of Freedom Logistics LLC;

4) Alternatively, that Freedom Logistics LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® statutory damages as provided in 15 U.S.C. § 1117;

5) That Freedom Logistics LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® treble damages and attorneys' fees as provided in 15 U.S.C. § 1117 on the ground that its acts as alleged herein have been willful and wanton;

6) That Tranzact Technologies, Inc. d/b/a Freedom Logistics® be granted its costs in this action, including an amount for reasonable attorney fees as provided for in 15 U.S.C. § 1117.

7) For such other relief that this Honorable Court shall deem just and proper.

**COUNT III – Service Mark Dilution (15 U.S.C. § 1125(c)(1))**

37. Freedom hereby re-alleges and incorporates paragraphs 1 – 36 above as though fully set forth herein this Count III.

38. Freedom, operating under the "Freedom Logistics®" service mark, is well-known, famous and well-recognized in interstate commerce throughout the transportation industry and most specifically the motor carrier transportation industry among shippers and motor carriers as providing a comprehensive, as well as specialized, high quality Logistics Service through the use

of up-to-date proprietary technology accommodating large, medium and small shippers and motor carriers.

39. Freedom's "Freedom Logistics®" service mark is distinctive in the transportation industry as representing a unique business model that secures high quality motor carriage and other Logistics Services throughout the United States.

40. Freedom registered the "Freedom Logistics®" service mark with the USPTO on the principal register and since 1996, Freedom has secured motor carrier service that stands alone and that is included in other Logistics Services performed by Freedom throughout the United States.

41. Freedom has actively defended its "Freedom Logistics®" service mark on many occasions, as outlined in Paragraph 21 above and by such active defense caused infringers at each location so designated to cease using the Mark, including causing infringers in Tennessee, Florida, Illinois, Indiana, New Jersey, South Carolina, Texas, California, Pennsylvania and Ohio to cease using the service mark, "Freedom Logistics®".

42. Defendant adopted the "Freedom Logistics®" service mark after it had become famous, and more specifically after Freedom invested substantial monies and had undertaken use of the service mark "Freedom Logistics®" so as to make it famous.

43. Defendant's use of the "Freedom Logistics" service mark has caused dilution of Freedom's service mark and will likely cause further dilution of Freedom's service mark by gradually diminishing the "Freedom Logistics®" service mark's value and by providing substandard or non-conforming service such that goodwill and positive associations created by Freedom's "Freedom Logistics®" service mark will be diminished.

44. Defendant has used the "Freedom Logistics" service mark in interstate commerce in a direct dilution of Freedom's consistent use of the service mark, "Freedom Logistics®" in the same territories involving the same transportation and logistics services market.

WHEREFORE, Tranzact Technologies, Inc. d/b/a Freedom Logistics requests this Court to Enter an Order providing for the following:

1) Restraining and enjoining Freedom Logistics LLC, its officers, agents, employees, successors and attorneys, and all those in active concert or participation with it from continued use of the entity name or service mark "Freedom Logistics®";

2) Requiring Freedom Logistics LLC to amend its Articles of Organization and its name of record on file with the Tennessee Secretary of State, and all states in which it registers to do business;

3) That Freedom Logistics LLC be required to account for and pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® all profits to which it may be entitled and such other damages it suffered as a result of the wrongful acts of Freedom Logistics LLC;

4) Alternatively, that Freedom Logistics LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® statutory damages as provided in 15 U.S.C. § 1117;

5) That Freedom Logistics LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® treble damages and attorneys' fees as provided in 15 U.S.C. § 1117 on the ground that its acts as alleged herein have been willful and wanton;

6) That Tranzact Technologies, Inc. d/b/a Freedom Logistics® be granted its costs in this action, including an amount for reasonable attorney fees as provided for in 15 U.S.C. § 1117.

7) For such other relief that this Honorable Court shall deem just and proper.

Respectfully submitted,

Tranzact Technologies, Inc. d/b/a
Freedom Logistics®

By: /s/ Daniel C. Sullivan
One of its Attorneys

Daniel C. Sullivan
Andrew S. Johnson
Sullivan Hincks & Conway
120 West 22nd Street, Suite 100
Oak Brook, IL 60523
(630) 573-5021